[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-10457

Non-Argument Calendar

————————————————

FRANK JOSEPH SCHWINDLER,

Plaintiff-Appellant,

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF
CORRECTIONS,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:11-cv-01276-TCB

———————————————

Before BRASHER, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

In 2011, Frank Schwindler, a Native American inmate at the Georgia Department of Corrections ("GDOC"), sued the GDOC Commissioner (the "Commissioner"). Schwindler brought three claims under 42 U.S.C. § 1983 for (1) denial of access to courts under the Fourteenth Amendment; (2) retaliation for First Amendment protected speech; and (3) violation of religious freedoms under the First Amendment and Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"). Eventually, however, the parties filed a 2017 stipulated voluntary dismissal of Schwindler's claims under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and the case was closed in 2017.

Years later, in 2022, Schwindler filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking relief from the stipulated dismissal and asking the district court to reopen his case. In support of his motion, Schwindler argued (1) the parties entered into settlement agreements, and (2) the Commissioner breached those agreements. The district court denied Schwindler's Rule 60(b)(6) motion, ruling there was no evidence (1) of the purported settlement agreements, or (2) that the Commissioner breached such an agreement. Schwindler appealed.

Because the parties dispute the existence of any alleged settlement agreement, Schwindler bears the burden of establishing its existence in writing by presenting the written agreement or some other document setting forth its terms.

After review, we conclude the district court did not err in concluding there is no evidence of any such settlement agreement. Accordingly, we affirm the district court's denial of Schwindler's Rule 60(b)(6) motion.

## I.     FACTS

### A.     Schwindler's 2011 Lawsuit

In 2011, Schwindler filed a *pro se* lawsuit against the Commissioner, raising three claims under 42 U.S.C. § 1983 for (1) denial of access to courts under the Fourteenth Amendment, (2) retaliation for engaging in First Amendment protected speech, and (3) violation of his religious freedoms under the First Amendment and RLUIPA.

### B.     September 25, 2012 Letter

On September 25, 2012, the GDOC sent a letter to Schwindler, advising that the GDOC granted his request for specified religious accommodations as follows:

> This correspondence is in response to the Native American religious accommodations you have requested in conjunction with the above-styled lawsuit. Pursuant to [GDOC] Standard Operating Procedure (SOP) VA01-0011, your requests have been considered and the following accommodations

> will be made in regard to your requests when you
> are incarcerated at a [GDOC]-run facility or
> institution[.]

The letter contained 10 specific religious accommodations, including access to certain religious objects, such as drums/rattles, sacred herbs/tobacco, communal shells, and feather fans.

Although it referenced Schwindler's lawsuit, the letter did not seek any consideration from Schwindler—such as the dismissal of any claims—in exchange for the religious accommodations. The letter did not mention settlement of the lawsuit, much less purport to be a settlement agreement.

## C.    October 5, 2012 Stipulated Dismissal

By July 20, 2012, Schwindler had counsel. On October 5, 2012, the parties filed a Rule 41(a)(1)(A)(ii) stipulated voluntary dismissal *without prejudice* of Schwindler's RLUIPA and First Amendment claims. The parties asserted that "[a]ll other claims in the case remain pending." Notably, under our recent precedent, this stipulated dismissal was ineffective because it sought to dismiss fewer than all claims against the Commissioner. *See Est. of West v. Smith*, 9 F.4th 1361, 1367 (11th Cir. 2021) ("We have explained that Rule 41(a)(1) means precisely what it says, and that a Rule 41(a)(1) voluntary dismissal disposes of the *entire* action, not just some of the plaintiff's claims." (quotation marks and citations omitted)); *In re Esteva*, 60 F.4th 664, 675 (11th Cir. 2023) ("A plain reading reveals that [Rule 41(a)(1)(A)] does not

authorize the voluntary dismissal of individual claims; rather, the Rule requires that a plaintiff dismiss the entire action.").

### D.    May 2, 2017 Letter regarding Court Access Claim

Four and a half years later, on May 2, 2017, Ahmed Holt, the warden of Phillips State Prison, sent the Phillips State Prison Library staff a letter regarding Schwindler's law library access. The 2017 letter stated, "As per [GDOC] Policy IIA14-0001, Inmate Frank Schwindler will be allowed an additional four (4) hours of law library time per week, totaling six (6) hours from May 2, 2017 through May 31, 2017."   The warden's letter also noted that "[t]hese additional four (4) hours are a privilege and not a right and can be revoked anytime at the discretion of the Warden."

This May 2, 2017 letter did not reference Schwindler's lawsuit or purport to be a settlement agreement.

### E.    May 2017 Emails about Settlement

In subsequent email exchanges between May 4 and 17, 2017, counsel for the parties discussed settlement.  Schwindler's counsel offered to dismiss Schwindler's case in exchange for (1) the GDOC providing Schwindler certain legal documents or a certification that such documents could not be located; (2) increased law library access; and (3) $2,000 as compensation for filing fees and ancillary expenses.

The Commissioner rejected Schwindler's offer and countered with its own: in exchange for the dismissal of Schwindler's lawsuit *with prejudice*, the Commissioner would not

seek an award of costs.  Schwindler's counsel emailed back that Schwindler accepted the Commissioner's offer and agreed to a Rule 41(a)(1)(A)(ii) stipulated voluntary dismissal *with prejudice* of "all claims asserted or that could have been asserted" in the case.

### F.    May 18, 2017 Stipulated Dismissal

On May 18, 2017, the parties filed a second Rule 41(a)(1)(A)(ii) stipulated voluntary dismissal *with prejudice* of "all claims asserted or that could have been asserted" in the case.  The stipulation was signed by counsel for both parties.  This time, the stipulated dismissal was a valid Rule 41(a)(1)(A)(ii) dismissal, as it dismissed all claims against the Commissioner.  *See Est. of West*, 9 F.4th at 1367; *In re Esteva*, 60 F.4th at 675.

Further, Rule 41(a)(1)(A)(ii) dismissals are self-executing, so Schwindler's case was effectively dismissed upon the parties' filing.  *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277-78 (11th Cir. 2012) (holding that, unless otherwise stated, a Rule 41(a)(1)(A)(ii) dismissal "is self-executing and dismisses the case upon filing").

### G.    November 14, 2022 Motion to Vacate under Rule 60(b)(6)

Five years later, on November 14, 2022, Schwindler, now proceeding *pro se*, filed a Rule 60(b)(6) motion to (1) vacate the parties' October 5, 2012 and May 18, 2017 Rule 41(a)(1)(A)(ii) dismissals, and (2) reopen the case.

Liberally construing his Rule 60(b)(6) motion, Schwindler alleged that the parties entered into two settlement agreements,

which the Commissioner later breached. According to Schwindler, in September 2012, the parties entered into an initial settlement agreement relating to his RLUIPA claim, whereby Schwindler agreed to dismiss that claim in exchange for the GDOC granting certain religious accommodations. However, Schwindler stated that these accommodations ceased in May 2019.

Further, Schwindler alleged that the parties later entered into a second settlement agreement, whereby Schwindler agreed to dismiss his access-to-courts claim in exchange for the GDOC providing him certain legal documents and access to those documents. However, Schwindler stated that in July and August 2017, the GDOC began restricting his access to his legal materials and to the law library.

The Commissioner responded that Schwindler's Rule 60(b)(6) motion should be denied for three reasons: (1) Schwindler did not show the existence of the first alleged settlement agreement; (2) his motion was filed two to three years after any alleged breach and thus was untimely; and (3) the parties never entered into the second alleged settlement agreement related to Schwindler's access-to-court claims, as evidenced by the May 2017 email chain described above.

The district court denied Schwindler's Rule 60(b)(6) motion, finding that Schwindler had not presented evidence of exceptional circumstances warranting relief. The district court also concluded that Schwindler provided no evidence of any

alleged settlement agreement between the parties or that the Commissioner breached any such agreement.

## II.    STANDARD OF REVIEW

We review for an abuse of discretion the denial of a Rule 60(b)(6) motion. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014) (quotation marks omitted).

## III.    DISCUSSION

Before the district court, Schwindler claimed the September 25, 2012 letter about religious accommodations and the May 2017 emails evinced two settlement agreements. Now on appeal, Schwindler does not contest the district court's findings that the May 2017 emails did not constitute a second purported settlement agreement. As a result, Schwindler has forfeited any challenge to that issue. *See Sapuppo v. Allstate Flordian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) (holding a party forfeits an issue by failing to plainly and prominently raise it on appeal). We thus address only Schwindler's arguments as to the purported religious accommodations settlement agreement.

Schwindler argues (1) the GDOC's September 25, 2012 "letter and the parties' conduct evidenced a settlement agreement," (2) the Commissioner's breach of that agreement

provided extraordinary circumstances warranting Rule 60(b)(6) relief, and (3) the district court failed to apply the correct legal standard. As background, we review Rule 60(b)(6) and relevant Georgia caselaw.

## A.    Rule 60(b)(6)

Under Federal Rule of Civil Procedure 60(b), a district court "may relieve a party . . . from a final judgment, order, or proceeding" for several listed reasons. Fed. R. Civ. P. 60(b). Subsection 6 contains a catch-all provision, providing a remedy for "any other reason that justifies relief." *Id.* 60(b)(6). Relief under Rule 60(b)(6) is "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances" and "[t]he party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Even when such a showing is made, "whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (alteration in original) (quotation marks omitted).

## B.    Georgia Contract Law

"[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004). Even though the parties' alleged settlement agreement arose in the context of Schwindler's federal law claims, state contract law directs our analysis. *See Resnick v. Uccello Immobilien*

*GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000).  Both parties argue Georgia law controls here.

The elements of contract formation under Georgia law are (1) parties able to contract, (2) consideration, (3) the parties' assent to the terms of the contract, and (4) a subject matter upon which the contract can operate.  GA. CODE ANN. § 13-3-1. Critically, the parties must mutually agree to the *definite* terms of an agreement to form a valid contract.  *Tillman v. Vinings Bank*, 751 S.E.2d 117, 120 (Ga. Ct. App. 2013).

Where, as here, the existence of a settlement agreement is disputed, "the proponent of the settlement must establish its existence in writing."  *See Herring v. Dunning*, 446 S.E.2d 199, 202 (Ga. Ct. App. 1994); *Reichard v. Reichard*, 423 S.E.2d 241, 243 (Ga. 1992).  The writing may consist of a formal written agreement signed by the parties or "letters or documents prepared by attorneys which memorialize the terms of the agreement." *Herring*, 446 S.E.2d at 202 (quotation marks omitted); *see also Tranakos v. Miller*, 470 S.E.2d 440, 444 (Ga. Ct. App. 1996) ("Here, the written transcripts satisfy the writing requirement by providing certainty and finality as to the exact terms of the agreement.").  However, "[i]t is the duty of courts to construe and enforce *contracts as made*, and not to make them for the parties." *Herring*, 446 S.E.2d at 201 (quotation marks omitted).

### C.    No Settlement Agreement

Here, because the parties dispute whether they entered into a settlement agreement, Schwindler must establish the

existence of the agreement and its terms in writing.  *See id.* at 202. The only writing Schwindler presents is the GDOC's September 25, 2012 letter.  Schwindler argues the Commissioner's assent to some sort of settlement agreement can be inferred (1) from the close proximity between the September 25, 2012 letter and the parties' attempted partial Rule 41(a)(1)(A)(ii) dismissal on October 5, 2012, and (2) because that is "[t]he only plausible reason for Mr. Schwindler to voluntarily dismiss his religious-based claims." Schwindler's arguments fail for several reasons.

First, although it references Schwindler's lawsuit, the September 25, 2012 letter does not (1) mention "settlement" or even settlement discussions between the parties, or (2) set forth the terms of a settlement agreement, such as the granting of Schwindler's religious accommodations in exchange for the dismissal of his claims.  Second, the September 25, 2012 letter does not even mention Schwindler's legal claims or allude to the manner in which those claims would be dismissed—*e.g.*, with or without prejudice.  Third, the September 25, 2012 letter does not purport to condition the granting of Schwindler's religious accommodations upon the dismissal of his claims.

Fourth, Schwindler has presented no other document showing that such an agreement existed or the definite terms of that agreement.  *See Tillman*, 751 S.E.2d at 120 (stating settlement agreements require "mutual assent to the definite terms"); *Herring*, 446 S.E.2d at 202 (holding a settlement agreement must be established by a writing where its existence is disputed).  At

one point in his reply brief, Schwindler concedes "that the September 25, 2012 letter—standing alone—does not prove an agreement." Under Georgia law, without such documentary evidence, we cannot conclude the parties entered into a settlement agreement that the Commissioner then breached, and thus, Schwindler did not present extraordinary circumstances warranting relief under Rule 60(b)(6). Therefore, the district court did not abuse its discretion in denying Schwindler's Rule 60(b)(6) motion.

## D.    The District Court Applied the Correct Legal Standard

A district court abuses its discretion when it applies the wrong legal standard, such as "when it analyzes evidence under the wrong test or applies a test to evidence that the test should not apply to." *Aycock*, 769 F.3d at 1068.

As this Court has often repeated, a party seeking relief from judgment under Rule 60(b)(6) must show that exceptional or extraordinary circumstances warrant such relief. *See Griffin*, 722 F.2d at 680; *Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1244 (11th Cir. 2023) ("Relief under Rule 60(b)(6) is only available in 'extraordinary circumstances.'" (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). That is precisely the standard the district court applied here in denying Schwindler's Rule 60(b)(6) motion. The problem for Schwindler is that the district court did not abuse its discretion in finding that no settlement agreement existed.

Nonetheless, Schwindler argues the district court failed to consider the following equitable considerations: (1) his claims were dismissed by stipulation in 2017 without a hearing on the merits; (2) he did not attempt to use his Rule 60(b)(6) motion as a substitute for an appeal; and (3) he filed his Rule 60(b)(6) motion within a reasonable time. The district court did not need to examine these alleged equitable considerations because it had already determined the September 25, 2012 letter did not constitute a settlement agreement, and thus, there was no threshold circumstance on which to base the "extraordinary remedy" supplied by Rule 60(b)(6). *See Griffin*, 722 F.2d at 680.

## IV.    CONCLUSION

For the above reasons, we affirm the district court's denial of Schwindler's Rule 60(b)(6) motion.

**AFFIRMED.**